AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 BROADWAY #1133
Oakland, CA  94612
Telephone: 510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
DIANE WEBER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE WEBER<br><br>Plaintiff,<br><br>v.<br><br>B.A.D. LLC dba BLUE STREAK TOWING; AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH<br><br>Defendants. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>3. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff DIANE WEBER complains of Defendants B.A.D. LLC dba BLUE STREAK TOWING; AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH, and alleges as follows:

1.      **INTRODUCTION:** Defendant American Automobile Association of Northern California, Nevada & Utah (AAA) dispatched a tow truck from Defendant B.A.D. LLC dba Blue Streak Towing (Blue Streak) to assist Plaintiff when her car broke down.  When Blue Streak arrived to tow Plaintiff's car, the driver of the truck refused to provide Plaintiff Diane Weber with certain services, including allowing her to ride in the cab of the tow truck with her service dogs

while her car was being towed. Defendants forced Plaintiff to choose between being left with a broken-down car in the a remote area on a cold and dark night and putting herself and her service dogs in danger by having her service dogs ride in the car being towed. Defendants' dispatcher and tow truck driver failed to provide her with full and equal service as required by federal and state law.

2. This lawsuit seeks injunctive relief and damages against the owners and operators of AAA and Blue Streak Towing, for denying full and equal access to Plaintiff Diane Weber, a physically disabled person who uses a service dog. On January 31, 2023, Plaintiff was refused full and equal service by Defendants specifically because she requested that her service dogs be allowed to accompany her in the tow truck while her car was being towed away.

3. As a result of Defendant's illegal acts, Plaintiff suffered denial of her civil rights and suffered physical, mental and emotional damages. Plaintiff is a member of AAA, and AAA contracts with Blue Streak Towing to provide towing service to AAA members in the area where Plaintiff lives. She may need the services of AAA and Blue Streak again, but Plaintiff cannot utilize Defendants' services until their policies are made accessible to disabled individuals who use service dogs, including revision of their service dog policies and necessary employee training and/or re-training. She has brought this lawsuit to force Defendants to change their discriminatory and illegal policies, and to force Defendants to compensate her for refusing her full and equal service, although she is a physically disabled person who needs the assistance of her qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog while using the services of AAA and Blue Streak.

4. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC sections 12101 *et seq*. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to violations of California Civil Code sections 51, 52, 54, 54.1, and 54.3.

5. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is

proper because Defendant AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH is headquartered in Contra Costa County.  Its office is located at 1277 Treat Blvd., Suite 1000, Walnut Creek, California.  Further, Defendant AAA has purposefully availed itself of the privileges and amenities of this district by and including, but not limited to, advertising (print and internet) in the venue, actively soliciting customers and business from residents of the venue, active and consistent paper and electronic communications with customers residing in the venue, maintaining an "interactive" website fully available to customers in the district.

6. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict because the business which is the subject of this action is located in this intradistrict.

7. **PARTIES:** Plaintiff Diane Weber is a "qualified" physically disabled person. She suffers from a neuro muscular disorder called fibromyalgia which causes her a lot of pain and balance issues which can cause her to fall.  Plaintiff relies upon her service dog, a toy Australian Sheppard named "Josie Wales," and her service dog in training, an Australian Shephard named "Tikka" for mobility, balance, assistance getting up when she falls, and to getting someone to assist if Plaintiff falls down and is unable to get up.  At the time of the incident, Josie Wales was 15 lbs. She was 16" long, and 13" tall. Tikka was 30 lbs., 19" long and 16" tall. Plaintiff estimates that Josie Wales could have sat on her lap and Tikka could lie down at her feet in the cab of the tow truck. Plaintiff individually trained Josie Wales to perform the tasks that she needed assistance with, and she has been working with Tikka for almost a year to replace Josie Wales, who is retiring, in performing the tasks that Plaintiff needs assistance with.  Plaintiff feels confident task training Josie Wales and Tikka because of her extensive experience training and working with dogs at the humane society.  At all times relevant to the complaint both Josie Wales and Tikka wore vests that clearly and prominently identified them as service animals.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

8. Defendants AMERICAN AUTOMOBILE ASSOCIATION OF NORTHERN CALIFORNIA, NEVADA & UTAH and B.A.D. LLC dba BLUE STREAK TOWING are and

were at all times relevant to this Complaint the owners, operators, lessors and/or lessees of the subject business whose services Plaintiff attempted to utilize on January 31, 2023. Plaintiff is informed and believes Defendants performed all acts and omissions stated herein which proximately caused the damages complained of. Plaintiff is informed and believes that each of the Defendants herein is the agent, employee, or representative of each of the other Defendant, and each performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.

9.   AAA and Blue Streak Towing are places of "public accommodation" and a "business establishments" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

10.   **FACTUAL STATEMENT:** Plaintiff Diane Weber began working with her service dog Josie Wales about 12 years ago to assist her with mobility, balance, and assisting her in getting up after a fall arising from her disability. Josie Wales is a 12-year-old toy Australian Shephard who has trained to be a service dog since she was eight weeks old. Plaintiff has trained Josie Wales to serve her specific needs throughout their relationship. Josie Wales is getting older, and Plaintiff is in the process of training her replacement, Tikka. Tikka was six months old at the time of the incident. Tikka is an Australian Sheppard Plaintiff has been working with Tikka since she was 8 weeks old. She is being trained to assist Plaintiff with mobility, balance, and assisting her in getting up after a fall.

11.   Josie Wales and Tikka are working dogs; they are not pets. Plaintiff, Josie Wales, and Tikka have trained extensively together, and they supplement that training daily. Plaintiff takes Josie Wales and Tikka everywhere with her in public. It is important they stay together at all times because (a) Josie Wales and Tikka provide important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. Where Plaintiff goes, Josie Wales and Tikka go. Were Plaintiff separated from her service dogs, she would be at risk of falling and being unable to get up after the fall.

12. Josie Wales and Tikka wear vests with a patch and several tags that indicate she is a service dog. Additionally, they wear tags which includes the words, "SERVICE DOG Access Required." Below are photos of Josie Wales and Tikka as they looked on the date of the incident.

Josie Wales                                          Tikka

 

13. On January 31, 2023, Plaintiff drove from her home with her service dogs to the library in Polluck Pines. She volunteers at the library on a regular basis to teach children about service dogs. Plaintiff had both of her service dogs with her so that they could show the children the tasks they are trained to perform to assist her due to her disability. The library is also an excellent opportunity for Tikka to get exposure interacting and working in a public setting.

14. Approximately two days prior to the incident, a significant snow/ice storm rolled in through Polluck Pines. The conditions were still icy and there was snow on the ground while Plaintiff was driving to the library left over from the storm. When she arrived at the Polluck Pines library, Plaintiff determined that it was too icy for her to walk from her car in the parking lot to the entrance of the library, so she decided to turn right around and drive home.

15. While Plaintiff was driving on Pony Express Trail, the transmission in her Honda-HRV went out. She managed to navigate into a nearby parking lot servicing a Safeway. Once she was safely in a parking space, Plaintiff called AAA to request towing services. However, Plaintiff was only able to reach AAA's automated service which requested that she download an app or a link on her phone to request service. Plaintiff is not tech savvy, and she was beginning to suffer symptoms of anxiety and panic about her situation. She called her husband to request that he assist her in arranging towing services from AAA. She gave him all the relevant information, and he contacted AAA service for her. Once Plaintiff's husband had made contact with AAA and arranged towing services for Plaintiff, he called her back and let her know that it would be a long wait for the tow truck.

16. Plaintiff felt relief that towing services had been arranged, and she settled in to wait for the tow truck to arrive. Plaintiff waited approximately three hours for the tow truck to arrive. At around 7:15 pm, a tow truck with a Blue Streak towing logo on it arrived to assist her.

17. Plaintiff exited her car and greeted the tow truck driver. She gave him her AAA card, and he began completing the paperwork to tow Plaintiff's car. At this point, Plaintiff and her service dogs went towards the cab of the tow truck to get inside so that they could travel with Plaintiff's car back to her home. Plaintiff estimated that her dogs could sit with her, on her lap and at her feet in the truck, and they would post no interference to the driver that way.

18. As Plaintiff, Josie Wales, and Tikka made their way to the cab of the tow truck, the Blue Streak Towing Company driver told Plaintiff that her dogs could not ride with her in the cab. Plaintiff explained that Josie Wales and Tikka are service dogs and are allowed to ride with her because they need to stay wither her wherever she goes. She also explained that she could not be separated from them because they perform certain tasks for her to assist with her disability. Both Josie Wales and Tikka were wearing vests identifying them as service dogs.

19. Defendants' employee and agent again reiterated that she could not take her dogs in the truck. He stated that the owner of Blue Streak Towing would not permit *any* dogs in the truck. Plaintiff again reiterated that her dogs were service dogs and therefore allowed to accompany her anywhere she was allowed to go. She then explained and offered that Josie Wales

could ride on her lap while Tikka would be on the floor of passenger's seat at her feet.

20. Defendants' employee/agent then began to berate Plaintiff for suggesting this idea, and he told her that her dogs would have to ride in her car while it was being towed and not in the cab of the tow truck.

21. Plaintiff was very upset at being rebuked in this manner by the tow truck driver. The driver then told Plaintiff that he was going to call his boss so that he could tell her himself that her service dogs would not be allowed into the cab of the tow truck. The driver dialed the phone and held it out, on information and belief, for Plaintiff to speak with his boss. However, Plaintiff was much too upset to speak with anyone at this point, she was crying and having severe anxiety symptoms.

22. Defendants' employee/agent then told Plaintiff to put her service dogs back in her car and "pull herself together," and only then would he tow her car. Plaintiff felt that she had no choice but to do as he said. Her only other option was to wait in the cold and dark Safeway parking lot for another tow truck who would accept her service dogs. Plaintiff was terrified while she rode home in the cab of the tow truck that something would happen to her service dogs while they rode in the car or that she would need them to perform a task while they were separated from her. She was also concerned they were cold and could suffer ill health effects. Plaintiff was unable to leave her home for two days due to the trauma she experienced.

23. On February 6, 2023, Plaintiff called AAA to complain about the treatment she had endured from Defendants' employee. She spoke with a customer service representative "Kim" who told her that AAA does let service dogs ride in the cabs of tow trucks. "Kim" also told Plaintiff that she would make a note that Blue Streak Towing would be removed from AAA's roster of tow trucks due to this incident. She also told Plaintiff that she would not be charged for any part of her tow on January 31, 2023, and that a manager would be in contact with her regarding the incident.

24. None of those promises turned out to be true. Plaintiff never received a call from a manager, and she was charged the full price for the January 31, 2023, tow. Additionally, when she called AAA a couple of months later to ask if AAA continued to dispatch Blue Streak Towing

to tow cars, the operator confirmed that AAA continued to use Blue Streak Towing as one of its towing companies. This additionally deterred Plaintiff from wanting to use AAA towing or Blue Streak Towing again in the future.

25. Plaintiff continues to be a member of AAA, and she wishes to utilize its services again. However, Plaintiff can only feel safe about doing so *after* both Defendants have implemented proper service animal policies and training of its staff, including dispatchers and tow truck drivers. Plaintiff is deterred from using the AAA's and Blue Streak Towing services until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

26. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 25, above, and incorporates them herein by reference as if separately repled.

27. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

28. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

29. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation

Act and in the Americans with Disabilities Act of 1990.

30. AAA and Blue Streak Towing are public accommodations within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(F). Their towing and other automotive services are offered to the public at, or as part of, that public accommodation.

31. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

32. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm. Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**
>
> …
>
> Allergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals.

*Id.* (emphasis in original).

33. Defendants have a policy and practice of denying and restricting access to patrons with service animals.

34. On information and belief, as of the date of Plaintiff's denial of service by AAA and Blue Streak Towing on or about January 31, 2023, Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendants' premises, in violation of the ADA.

35. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

36. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). AAA and Blue Streak Towing are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to "any service establishment." 42 USC § 12181(7)(F).

37. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated

differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

38.  The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

39.  On information and belief, as of the date of Plaintiff's encounter with Defendants and as of the filing of this Complaint, Defendants' actions and policies denied and continue to deny full and equal access to Plaintiff and to other disabled persons who use service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

40.  Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from using the services of AAA and Blue Streak Towing and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges,

advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

41.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title. On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

42.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize AAA and Blue Streak Towing, in light of Defendants' policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:
DAMAGES AND INJUNCTIVE RELIEF
FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A
PUBLIC ACCOMMODATION
(Civil Code §§ 54 *et seq.*)**

43.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 42 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

44.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public

places." Civil Code § 54(a).

45. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . and privileges of all common carriers. . . motor vehicles. . . or any other public conveyances or modes of transportation." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b). "'[S]ervice dog' means a dog individually trained to the requirements of the individual with a disability, including, but not limited to, minimal protection work, rescue work, pulling a wheelchair, or fetching dropped items." Civ. C. § 54.1(a)(iii).

46. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1." Civil Code section 54.1(d) states that "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and this section does not limit the access of any person in violation of that act."

47. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

48. Defendants are also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or

resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

49. AAA and Blue Streak Towing are public accommodations within the meaning of the CDPA. On information and belief, Defendants are the owners, operators, lessors or lessees of the public accommodation and mode of transportation relevant in this case.

50. Defendants made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of use of its place of business with her service dog. Defendants have a policy of denying persons with disability who use service dogs use of their tow trucks ("motor vehicles") as a "mode of transportation." Civ. C. § 54.1(d). As a result of that decision and policy, Plaintiff has faced the continuing discrimination of being barred from using this public accommodation and place of business based upon Defendants' illegal prohibition of her legally protected use of her service dogs. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she need to utilize the services, especially since she is a member of AAA and AAA continues to contract with Blue Streak Towing. Plaintiff is unable utilize the services of AAA and Blue Streak Towing until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on and since January 31, 2023, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

51. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled, including but not limited to mobility disabled individuals who require the assistance of service animals, from full and equal access to this public accommodation, and the business and its tow trucks. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that she is a person with disabilities and one who requires the assistance of a service animal.

52. Plaintiff, on information and belief, will need to utilize the services of AAA and Blue Streak Towing again but is deterred from doing so, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continues, to achieve equal access to and use of these public facilities and motor vehicles. Therefore, Plaintiff cannot utilize Defendants' services and is deterred from further patronage until Defendants' policies are altered to make its public accommodation accessible for disabled persons, including Plaintiff and other mobility disabled persons and disabled individuals who require the assistance of a service animal.

53. The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendants' discriminatory policies. As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises and the subject tow truck vehicles, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

54. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

55. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and maintaining the subject facilities and discriminatory policies, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code

sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is physically disabled and unable, because of the policy barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.

56. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990) and *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009)), Defendants' behavior was intentional. Defendants were aware and/or was made aware of its duties to refrain from establishing discriminatory policies against physically disabled persons who require the use of service animals, prior to the filing of this complaint.  Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicates actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

57. **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and services accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

58. Plaintiff suffered damages as above described as a result of Defendants' violations. Damages include Plaintiff being deterred from further utilizing the services of AAA and Blue Streak Towing until their discriminatory policies are changed.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## THIRD CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED
## BY CIVIL CODE SECTION 51(f)

59. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 58 of this Complaint and incorporates them herein as if separately re-pleaded.

60. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

61. California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of her disability, and the fact that she requires use of a service dog, constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

62. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

63. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

64. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs

within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

65. **FEES AND COSTS:** As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

66. Plaintiff suffered damages as above-described as a result of Defendants' violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Diana Weber prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendants, their agents, officials, employees, and all persons

18

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to use the services of AAA or Blue Streak Towing;

    c. That the Court issue preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees and/or its agents of the subject public accommodation to modify the above described policies and related practices to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs, including accommodating the need for the assistance of a service dog;

    d. An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, and general damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendants under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: October 25, 2023                                  REIN & CLEFTON

                                                         /s/ Aaron M. Clefton
                                                        By AARON M. CLEFTON, Esq.
                                                        Attorneys for Plaintiff
                                                        DIANA WEBER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: October 25, 2023                                  REIN & CLEFTON

                                                         /s/ Aaron M. Clefton
                                                        By AARON M. CLEFTON, Esq.
                                                        Attorneys for Plaintiff
                                                        DIANA WEBER